UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

YULIETH GOMEZ MEJIA,　　　　　　　　　　　　　　　　　　　　　　Petitioner,

v.　　　　　　　　　　　　　　　　　　　　　　　　　Civil Action No. 4:25-cv-82-RGJ

JASON WOOSLEY, ET AL.　　　　　　　　　　　　　　　　　　　　　Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Yulieth Gomez Mejia's Writ of Habeas Corpus. [DE 1]. Respondents responded on August 8, 2025. [DE 6]. The Court held a Show Cause Hearing on August 12, 2025. [DE 4]. After the hearing, the Court allowed further briefing. [DE 8]. Both parties obliged. [DE 10, DE 13]. On request of the Petitioner, the Court held an evidentiary hearing on September 24, 2025. [DE 20]. Again, the Court ordered further briefing. Both parties complied. [DE 27, DE 29, DE 30, DE 31]. Although Respondents filed their brief late, the Court will **GRANT** Respondents' Motion for an extension. [DE 28]. The petition is now ripe for adjudication. For the reasons below, the Court will **GRANT** the Petition for a Writ of Habeas Corpus.

### I.　　　Background

Petitioner Yulieth Gomez Mejia ("Mejia") is a 33 year old native and citizen of Colombia. [DE 1 at 1]. Mejia is a native Spanish speaker with "minimal ability to read, write, or speak English." [DE 27 at 264]. She entered the United States with her minor child, who is also a citizen of Colombia, on December 11, 2022. [DE 1 at 4]. She was subsequently paroled by the Department of Homeland Security ("DHS") pursuant to 8 U.S.C. §1182.[1] [*Id.*]. She was not placed into removal

---

[1] Although the Court recognizes this Section is derived from the Immigration and Nationality Act ("INA") § 212, the Court will use U.S.C. citations throughout for uniformity and asks the Parties to do the same.

proceedings at the time nor provided with a Notice to Appear. [*Id.*]. On July 31, 2023, she filed an application for asylum and withholding of removal. [*Id.*].

On July 28, 2025, Mejia appeared at an Immigration of Customs Enforcement ("ICE") office for a check-in. [*Id.*]. There, she was detained without warning and transferred to Grayson County Detention. [*Id.*]. According to Petitioner, ICE was attempting to move Mejia into "expedited removal proceedings" after she was "processed too quickly" at the border upon arrival. [*Id.*]. At the time of arrest, no documents were given to Mejia. [*Id.*]. After arriving at Grayson County Detention, an initial document was served on Mejia. [*Id.*]. It was a Notice and Order of Expedited Removal dated July 28, 2025. [DE 27 at 266]. The Notice and Order were both in English. [*Id.*]. The Order stated that "pursuant to [8 U.S.C. § 1225 ("Section 1225")] of the Immigration and Nationality Act" Mejia is inadmissible to remain in the United States. [*Id.*]. Mejia was served with other documents as well, all in English. [*Id.* at 266-67].

From the period of July 28, 2025, through September 10, 2025, Mejia never saw or spoke to anyone at the detention facility to otherwise explain why she was detained. [*Id.* at 268]. About two weeks after her arrest, Mejia was taken to a library, within the detention facility to conduct a credible fear interview for her asylum claim. [*Id.*]. As of today, Mejia has not had any update regarding her asylum claim. [*Id.*]. On September 10, 2025, ICE formally served Mejia with a Notice to Appear. Then, on September 23, 2025, Mejia appeared before an Immigration Judge for a custody bond hearing. [DE 27-2 at 336]. However, the IJ denied the bond hearing because the IJ found that it had "no jurisdiction" to render a decision. [*Id.*].

The parties have been in dispute about which detention proceedings govern Mejia's detention. The standard removal proceedings of 8 U.S.C. § 1226 ("Section 1226"), which allow for a custody-bond hearing, or Section 1225, which do not. As of the latest information to the

Court, the United States contends that Mejia is governed pursuant to Section 1225. [DE 30 at 347]. Mejia contests that Section 1226 govern her detention. [DE 27 at 286].

Mejia's sole claim for relief is the assertion that the United States' violated her Due Process Rights under the Fifth Amendment. [DE 1 at 6]. Mejia seeks release from her detention, or in the alternative, a bond hearing. [*Id.* at 6; DE 27 at 287].

## II.     Exhaustion of Remedies

Petitioner states that "[b]efore addressing the merits of this due process claim, it must be addressed that administrative exhaustion is not required." [DE 27 at 278]. The United States does not respond, nor does it contest, that exhaustion is required. Still, the Court will examine exhaustion for thoroughness.

When neither a statute nor rule mandates exhaustion, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). This is also known as "prudential exhaustion." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

Here, no applicable statute or rule mandates exhaustion. As a result, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson* 725 F.3d at 593. The Sixth Circuit has not adopted any formal test, but instead, many trial courts within the Sixth Circuit borrow the Ninth Circuit test from *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). In the alternative, a court can also choose to waive exhaustion, when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

3

>  (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). As other courts within the Sixth Circuit have used the above test, so will this Court. *See id; Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025); *Villalta v. Greene*, 2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025). Using those factors, the Court finds that all factors favor weigh *against* requiring exhaustion.

First, the central question at issue in this matter is which detention provision applies to Mejia. This is a purely legal question of statutory interpretation, which other courts within this circuit have addressed too. *See Pizarro Reyes*, 2025 WL 2609425, at *3. Alternatively, even if an agency interprets the relevant statutes, this Court is not bound, or deferential to any agency interpretation of a statute. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) ("courts need not and under the APA *may not* defer to an agency interpretation of the law simply because a statute is ambiguous.") (emphasis added). Therefore, the Court does not need any agency expertise to help in their consideration of this purely legal decision. *Id.*

Second, because of the alleged Constitutional violation, an appeal to an administrative review board, here the BIA, is not necessary. The Sixth Circuit has held that due process challenges generally do not require exhaustion because the BIA cannot review constitutional challenges. *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006); *Lopez-Campos,* 2025 WL 2496379, at *4 (holding that because Lopez-Campos' habeas petition includes a due process claim, the appeal and process through an administrative scheme "is likely futile").

And lastly, the United States has made clear, at last, their position on Section 1225 as it applies to Mejia. The United States has taken this position in similar cases before this Court, and across the country. *See e.g., Pizarro Reyes*, 2025 WL 2609425, at *4; *Patel v. Tindall*, 2025 WL 2823607, at *2-4 (W.D. Ky. Oct. 3, 2025); *Simpiao v. Hyde,* 2025 WL 2607924, at *7 (D. Mass.

4

Sep. 9, 2025). Therefore, it is unlikely that any administrative review would lead to the United States changing its position and precluding judicial review. *Sterkaj v. Gonzalez*, 439 at 279. As a result, based on the above factors, this Court finds that prequential exhaustion is not required.

Also, in similar situations to the present, courts can waive exhaustion. *Lopez-Campos*, 2025 WL 2496379, at *5 ("Because exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition."); *Pizarro Reyes* 2025 WL 2609425, at *4 ("if the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive administrative exhaustion."); *Simpiao,* 2025 WL 2607924, at *6-7 (holding that because "the policy concerns animating the common-law exhaustion" are absent, "waiver of exhaustion is warranted").

And as the Court in *Lopez-Campos* noted, bond appeals before the BIA on average take six months to complete. *Lopez-Campos*, 2025 WL 2496379, at *5 (citing to *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)). Prolonging Mejia's detainment would mean unnecessary hardship, especially with a young daughter who she has been separated from, when the Court is able to resolve the purely legal question now. *Id.*

Therefore, this Court will follow their fellow trial courts and waive the exhaustion requirement for Mejia and reach the merits of her Petition.

### III.   Discussion

#### A.  Section 1225 vs. Section 1226[2]

The United States makes an argument regarding the applicability of Section 1225's versus Section 1226 nearly identical to that made in *Patel,* 2025 WL 2823607, at *2-4 and therefore the Court fully incorporates by reference its reasoning and decision in that action. There, this Court held that "an individual who has been paroled without first having been placed in expedited removal *cannot later be designated for expedited removal.*" *Id.* at 4. (emphasis in original). The United States, without citing to the applicable cases, states that "[s]ubsequent court holdings have questioned the impact of the parole that was provided to Petitioner under 8 U.S.C. § 1182(d)(5)" but that Mejia's "parole and its expiration are irrelevant, and those cases have no bearing on whether her detention is currently lawful." [DE 30 at 363]. However, that is in direct contradiction to our holding, and the reasoning from *Coal. Humane Immigr. Rights v. Noem*, 2025 WL 2192986, at *23-32 (D.D.C. Aug. 1, 2025). As stated, noncitizens who have been paroled "*cannot later be designated for expedited removal*." *Patel*, 2025 WL 2823607, at *4. This is *not* "question[ing] the impact" of parole, it is a *declaration* that if a noncitizen has been paroled, they cannot be designated for expedited removal. Applying that to Mejia, who the United States concedes was paroled upon entry into the United States, she cannot later be designated for expedited removal. A

---

[2] The Court acknowledges that since our previous decisions, more case law has developed. Originally, no case law existed for the United States' position. However, two recent decisions have since been published. Those decisions are *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sep. 24, 2025) and *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sep. 20, 2025). However, this Court is not obligated to follow those rulings. Additionally, within the District of Nebraska, there appears to be an internal split. *See Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); see also, *Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025). And although not within the same district court, there is now a split within California district courts as well. *See Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) (holding that Section 1226, not Section 1225 applies to Petitioner).
    Here, the Court will continue to hold as it did before in *Beltran Barrera v. Tindall,* 2025 WL 2690565 (W.D. Ky. Sep. 19, 2025), *Singh* v. *Lewis*, 2025 WL 2699219 (W.D. Ky. Sep. 22, 2025) and *Patel*. This is also in line with the majority of case law within this country, and more specifically, this circuit. *See, e.g., Lopez-Campos*, 2025 WL 2496379; *Pizarro Reyes v. Raycraft*, 2025 WL 2609425.

fact that the United States also concedes. [DE 30 at 361] ("[Mejia] was subject to detention when she was initially placed in *expedited removal proceedings*" (emphasis added).

Therefore, the Court holds that Mejia is subject to full removal proceedings within Section 1229a and detention proceedings under Section 1226. The Court must then examine if the process Mejia was afforded is consistent with the Due Process Clause.

### B. Lawfulness of Current Detention

As of today, Mejia remains in ICE custody. The Court must determine whether the continued detention is in violation of her Due Process. The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335.

#### i. Private interest

It is undisputed Mejia has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The fact that Mejia has already received a bond hearing does not diminish this private interest. Because, as reflected in the IJs order, the IJ declined to hear Mejia's case because the IJ found that no jurisdiction existed. [DE 27-2 at 336].

In *Espinoza v. Kaiser*, which contains similar facts to the present, the trial court found that a bond hearing, where the IJ "declined to exercise jurisdiction" because the IJ found the individual subject to mandatory detention of Section 1225, not sufficient process. 2025 WL 2675785, at *11 (E.D. Cal. Sep. 18, 2025) (holding that the bond hearings did not address due process because Petitioner was not afforded the chance for an explanation of their position). There, the Court found the appropriate remedy to be a proper bond hearing for an IJ to determine the issue of detention on the merits. *Id.* at 12.

Additionally, when ICE has initial discretion to detain or release a noncitizen pending removal proceedings, after the initial release, "the petitioner has a protected liberty interest in remaining out of custody." *Hernandez Nieves v. Kaiser*, 2025 WL 2533110, at *4 (N.D. Cal. Sep. 3, 2025). Due process then "requires a hearing before an immigration judge before re-detention." *Id.* As a result, the first *Matthews* factor favors Mejia's position.

          ii.     *Risk of Erroneous Deprivation*

Without a pre-detention hearing that Mejia is entitled, there is a significant risk of the erroneous deprivation of the liberty interest of remaining out of custody. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today, Mejia has not had an on-merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Nor have Respondents demonstrated that Mejia is a flight risk or a danger to the community. Mejia has also been separated from her minor child during this detention and the only information she has about her daughter is from the arresting ICE officer, who stated that the "state will now take care of her." [DE 27 at 266]. Mejia thus remains separated

8

and away from her home, family, and place of work. Thus, because of a high risk of erroneous deprivation of Mejia's liberty interest, the second *Matthews* factor favors Mejia's position.

### iii. United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao v. Hyde*, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025). But Petitioner has no criminal history and has attended her immigration hearings when required after being released on her recognizance. [DE 1 at 3]. It is not the role of the United States to "usurp" the role of an Immigration Judge. *Sampiao,* 2025 WL 2607924, at *10. Therefore, the Court finds that the United States' interest without a proper bond hearing is low. *Ramirez Clavijo v. Kaiser*, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2025). Thus, this factor also favors Mejia.

\* \* \*

Therefore, the Court finds that all three *Matthews* factors are in favor of Mejia. The current detention of Mejia without a proper bond hearing is in violation of her due process rights under the Fifth Amendment.

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel,* 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "[h]abeas has traditionally been a means to secure *release* from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). The Court will not depart from this norm. As a result, Petitioner must be released.

9

Pursuant to Section 1226, Petitioner is entitled a bond hearing on the merits before a neutral Immigration Judge. *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

## IV.   Conclusion

For the reasons stated above, the United States has violated Mejia's due process rights. The Court **GRANTS** Mejia's Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** her immediate release for a neutral bond hearing before an Immigration Judge. The United States is directed to release Petitioner Mejia from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **October 17, 2025.**

Rebecca Grady Jennings, District Judge
United States District Court

October 15, 2025